UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NORA TESKE, ) | | |
|     *Plaintiff*, ) | | |
| ) | | |
|     *vs*. ) | 1:11-cv-00412-JMS-TAB | |
| ) | | |
| CCA OF TENNESSEE, LLC, a/k/a/ Corrections ) | | |
| Corporation of America, ) | | |
|     *Defendant.* ) | | |
| ) | | |

**ORDER**

Presently before the Court are Plaintiff's Motion to File Supplemental Affidavit, [dkt. 59], and Motion to Amend/Correct and Substitute Signed Affidavit, [dkt. 74], which the Court **GRANTS**; Defendant's Motion to Strike Surreply, [dkt. 72], which the Court **GRANTS in part and DENIES in part**; and Defendant's Motion for Summary Judgment, [dkt. 35], which the Court **GRANTS in part and DENIES in part** for the reasons that follow.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A

party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).  Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### PROCEDURAL HISTORY AND EVIDENTIARY RULINGS

After Defendant CCA of Tennessee's ("CCA") Motion for Summary Judgment, [dkt. 35], was fully briefed, in the interests of clarity and deciding the case on the merits, the Court ordered Ms. Teske to file a surreply brief addressing the following issues raised for the first time in CCA's response brief[1]: whether Ms. Teske was a qualified individual under the ADA, and whether evidence of statements made by Ms. Teske's supervisors constituted inadmissible hearsay. [Dkt. 55.]

On August 7, 2012, Ms. Teske filed her surreply, [dkt. 58], and moved for leave to file a supplemental affidavit, [dkt. 59]. On August 13, 2012, CCA moved to strike Ms. Teske's surreply, [dkt. 72], and filed a brief opposing Ms. Teske's motion for leave to file a supplemental affidavit, [dkt. 71]. The next day, Ms. Teske filed a Motion to Amend/Correct and Substitute Signed Affidavit, [dkt. 74].

As stated above, the Court chooses to decide the case on the merits, but its invitation to further argue was limited to the two issues outlined above. So to the extent Ms. Teske's surreply is beyond the scope of the Court ordered clarification, the Court will not consider it. The remainder however, is responsive. For that reason, the Court grants in part and denies in part CCA's motion to strike Ms. Teske's surreply, [dkt. 72].

Regarding CCA's opposition to Ms. Teske's filing of the affidavit of Captain David Ward, the Court overrules it. Captain Ward's signed affidavit moots any hearsay objection to hearsay statements attributable to him. This includes mooting CCA's concern as to whether he

---

[1] The Court notes that it could have found that CCA waived its right to challenge Ms. Teske's status as a qualified individual under the ADA as the challenge came only on reply. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). However, as noted the Court opted for further briefing to enable merits review.

was speaking within the scope of his employment at the time he allegedly made those statements to Ms. Teske.[2]  Moreover, David Ward has been listed as a witness since August 24, 2011, [dkt. 24]. CCA has been aware of the statements attributed to him by Ms. Teske at least since her deposition January 20, 2012 [dkt. 45-2 at 63]. Having notice of the evidence, CCA cannot be unfairly prejudiced by its admission.

The Court further notes that Ms. Teske has attributed similar statements to Lt. Rinehart. With respect to his statement, CCA has not raised a scope of employment objection. Ms. Teske's deposition describes a workplace setting supporting a reasonable inference that Lt. Rinehart's statement falls within the hearsay exception of a statement made by an "agent or employee on a matter within the scope of that relationship and while it existed," Fed. R. Evid. 801(d)(2)(D).

CCA further objects to both Captain Ward and Lieutenant Rinehart's statements as irrelevant, citing case law that has excluded statements made by non-decisionmakers. [Dkt. 53 at 3-4.] These statements (the credibility of which must be determined by a jury) establish a retaliatory scheme that bears directly on the reason for Ms. Teske's termination, it is highly relevant to her claim.  While CCA relies on *Garcia v. U.S. Postal Service*, 414 Fed. Appx. 855, 857-858 (7th Cir. 2011) and similar cases in arguing that statements by non-decisionmakers cannot be used to establish a causal connection with respect to an adverse employment action, [dkt. 53 at 4], the statements made here are distinguishable from those in *Garcia*.  Here, neither Ward nor Rinehart is stating his own personal animus toward Ms. Teske, which would indeed be irrelevant.  Rather, they are assertions based on personal knowledge of an alleged retaliatory animus

---

[2] Ms. Teske places the timing of Captain Ward's statement in November, 2009.  CCA introduced evidence that Captain Ward had been placed on leave prior to the time the alleged statement was allegedly made.  CCA thereby challenges whether Ward's testimony was made during the course of his employment at CCA.  However, Ward has now personally affirmed telling Ms. Teske that CCA was trying to get rid of her, and that he was told by CCA's Chief of Security to issue unsubstantiated write-ups concerning Teske.

harbored by a upper level agent of CCA and therefore may be properly attributable to the entity itself. The statements are therefore relevant and admissible.

Therefore, the Court grants both Ms. Teske's Motion for Leave to File Supplemental Affidavit, [dkt. 59], and her Motion to Amend/Correct and Substitute Signed Affidavit, [dkt. 74]. Furthermore, as Captain Ward's affidavit bears directly on the reason for Ms. Teske's termination, it is highly relevant to her claim. Therefore, the Court grants both Ms. Teske's Motion for Leave to File Supplemental Affidavit, [dkt. 59], and her Motion to Amend/Correct and Substitute Signed Affidavit, [dkt. 74].

## III.
### BACKGROUND

The following facts, though not accepted as objectively true, are presented in the light most favorable to the non-moving party, Ms. Teske. In November 2008, Plaintiff Nora Teske became employed by CCA as a correctional officer. [Dkt. 36 at 4.] Correctional officers at CCA are expected "to maintain order in the facility and provide for security, care and direct supervision of inmates." [*Id*.] CCA also required Ms. Teske to be capable of working any post assignment on any shift. [*Id*.] According to CCA, the essential functions of the correctional officer position "include, but are not limited to: supervising inmates, enduring verbal and mental abuse when confronted by inmates; taking appropriate action to diffuse potentially disruptive situations; communicating effectively and coherently with staff, visitors and inmates, by giving information and directions, mediating disputes and advising of rights and processes; and establishing and maintaining effective working relations with others and handling difficult interpersonal contacts." [*Id*.]

### A. Workers' Compensation Claims

Ms. Teske's initial assignment was to General Population, where she was responsible for supervising inmates and performing inmate counts. [*Id*. at 5.] Following an injury to her shoulder in January 2009, Ms. Teske filed for workers' compensation benefits and was assigned to Attorney Visitation. [*Id*.] At that post, Ms. Teske remained seated at a desk while inmates visited with their attorneys, pastors, or probation officers. [*Id*.] The post did not require her to be in General Population. [*Id*.] In February 2009, after her workers' compensation claim closed, Ms. Teske returned to General Population, where she remained until March 2009. [*Id*.]

In March 2009, Ms. Teske suffered a knee injury at work and received medical restrictions requiring that she remain seated while working. [*Id*.] Ms. Teske also filed workers' compensation benefits as a result of this injury. [*Id*.]

Ms. Teske returned to work in April 2009, and was assigned to the facility's front administrative offices, a position that allowed her to sit 90% of the time and did not require her to be in General Population. [*Id*.] Following that post, Ms. Teske worked at Checkpoint, where she could sit 80% of the time, signed in lawyers, law enforcement officers, and employees seeking access to the facility, and did not come into contact with inmates. [*Id*.]

Ms. Teske was subsequently transferred to Medical, where she was responsible for supervising inmates seeking medical treatment. [*Id*. at 6.] This position allowed her to sit 80 to 85 percent of the time, and was not within the General Population. [*Id*.]

Following her assignment to Medical, Ms. Teske was transferred to Central, a position that required minimal standing and was within her medical restrictions. [*Id*.] On May 26, 2009, Ms. Teske returned to Attorney Visitation. [*Id*.] CCA claims that between April and May 2009, Ms. Teske was released from all restrictions. [*Id*.] Ms. Teske, however, maintains that on May 26, 2009, Ms. Teske's physician issued a restriction that she should have the "ability to sit if

needed." [Dkt. 46 at 2.] This disagreement is the only fact from CCA's brief that Ms. Teske disputes. [*Id*.]

### B. Leaves of Absence

Ms. Teske first requested leave under the Family Medical Leave Act ("FMLA") in June 2009, following the worsening of her knee condition. [*Id*. at 7.] Although Ms. Teske was not yet eligible for FMLA, CCA granted her request for leave. [*Id*.] Ms. Teske also used forty hours of leave during the weeks of July 26, August 2, August 9, and August 16, 2009, and she returned to work on August 23, 2009. [*Id*.] In October 2009, Ms. Teske's physician gave her the restriction of 75% standing and 25% sitting, with inmate contact allowed. [*Id*.] Later that month, she was released to work with no restrictions but the ability to sit when needed. [*Id*.]

In November 2009, Ms. Teske received the restriction that she have minimal inmate contact for two weeks, with which CCA complied. [*Id*.] Ms. Teske also requested FMLA leave from November 6, 2009, until December 21, 2009, citing bipolar disorder as the cause for leave. [*Id*.] CCA granted the request. [*Id*.]

Ms. Teske's knee-related restrictions ended during this time, and her second workers' compensation case resolved on December 17, 2009. [*Id*. at 8.] On December 21, 2009, Ms. Teske was released to work with no restrictions, and she returned to work on December 25, 2009, to an assignment in General Population. [*Id*.]

### C. Ms. Teske's Disciplinary Record

Ms. Teske was first disciplined in June 2009 for refusing to report to General Population, citing her reinjured knee as her reason for the refusal. [*Id*.] Because she did not provide medical documentation to support her claims, she received a three-day suspension. [*Id*.]

Ms. Teske was also disciplined on December 26, 2009, for reporting to work thirty-six minutes late, and on December 30, 2009, for providing only fifteen minutes notice to her shift supervisor that she would not be reporting for duty. [*Id*.] Because CCA's policy requires two hours' notice of an absence, Ms. Teske was placed on final warning and received a two-day suspension. [*Id*.] On the 30th, Ms. Teske had become suddenly nauseous shortly and less than two hours before her scheduled shift start. [Dkt. 46 at 5.] She was not suffering from nausea outside the two hour window. [*Id*.] The vomiting she experienced was sufficiently severe that she went to the hospital. [*Id*.] She was written up anyway. [*Id*.]

The foregoing discipline relates to Ms. Teske's medical condition, and the June 2009 discipline relates specifically to the condition for which she received worker's compensation benefits. Late in 2009, Ms. Teske was advised by Captain David Ward that CCA was trying to get rid of her because of the fact that she applied for and received workers' compensation benefits, had taken leave under the Family and Medical Leave Act (FMLA) and because of her disability. [*Id*. at 6.] Lieutenant Rinehart told her the same thing. [*Id*.] CCA's Chief of Security encouraged Captain Ward to write up Ms. Teske "for actions for which Correctional Officers are not ordinarily written up for [sic]." [Dkt. 74-1.]

On January 8, 2010, Ms. Teske engaged in a verbal confrontation with an inmate while assigned to General Population. [*Id*. at 9.] She became very emotionally upset and asked to be moved to a difference post. [*Id*.] When her request was refused and her supervisor instructed her to return to her post following the incident, she responded, "Fuck you." [*Id*.] Ms. Teske's insubordination was reported to the Warden, who determined that Ms. Teske's behavior violated CCA's Standards of Conduct. [*Id*.] Ms. Teske was subsequently terminated. [*Id*.]

In July 2010, Ms. Teske filed a charge of discrimination against CCA with the United States Equal Opportunity Commission ("EEOC"). The EEOC dismissed Ms. Teske's charge on January 19, 2011. In March 2011, Ms. Teske filed suit in this Court, alleging violations of the FMLA, Americans with Disabilities Act, ("ADA"), and the Indiana Workers' Compensation Act ("IWCA"). [Dkt. 1.]

## IV.
### DISCUSSION

Ms. Teske has alleged that CCA retaliated against her in violation of the FMLA, discriminated against her and denied her reasonable accommodations in violation of the ADA, and retaliated against her in violation of the IWCA.[3] The Court will consider each claim in turn.

**A. Ms. Teske's Claim of Retaliation under the FMLA (Count I)**

The FMLA provides workers with unpaid leave for "a total of 12 workweeks of leave during any 12-month period" for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA specifically prohibits employers from retaliating against employees who exercise their FMLA rights. 29 U.S.C. § 2615(a)(2). Employees may establish claims of FMLA retaliation using the same direct or indirect methods available under Title VII. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008) ("We evaluate FMLA and Title VII retaliation claims in the same manner, assessing the direct or indirect method of proof." (citations omitted)).

---

[3] Although Ms. Teske also initially alleged claims of FMLA interference and that CCA unlawfully required her to answer questions regarding disability prior to employing her, she expressly abandoned those claims in her response brief, [dkt. 46 at 1]. Accordingly those claims are dismissed with prejudice.

A plaintiff may establish a claim for retaliation by either the direct or indirect method of proof. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). While direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus," *id.* (internal citations omitted), circumstantial evidence may also suffice under the direct method when a plaintiff provides proof of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination." *Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008) (internal citations omitted).

### 1. The Direct Method of Proof

Ms. Teske first proceeds under the direct method of establishing her claim for retaliation, [*id*. at 9]. As circumstantial evidence of retaliation, Ms. Teske points to the temporal proximity of the end of her FMLA leave and her termination, specifically that she was terminated fifteen days after her return to work. [Dkt. 46 at 10.] However, temporal proximity alone is not sufficient to establish a "convincing mosaic" supporting an inference of retaliation. *Burks v. Wisconsin Dept. of Transp*., 464 F.3d 758-59 (7th Cir. 2006) ("[S]uspicious timing alone ... does not support a reasonable inference of retaliation" and "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second.") (internal citation and quotation marks omitted); *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (noting that suspicious timing alone will not establish a causal connection).

However, Ms. Teske also offers direct evidence of retaliation. She has submitted admissible statements from two of her supervisors, Captain Ward and Lieutenant Rinehart, that CCA was trying to find a reason to fire her, [dkt. 46 at 10], and that David Ward also told her that CCA was "trying to get rid of her because of the fact that she had applied for and received work-

ers' compensation benefits, had taken leave under the [FMLA], and because of her disability," [dkt. 59-1 at 1]. As discussed earlier, the Court deems the affidavit of Captain Ward and the statement attributable to Lieutenant Rhinehart admissible evidence. The direct evidence of retaliation contained in those statements is sufficient to establish a prima facie case under the direct method of proof. Allowing Ms. Teske the benefit of reasonable inferences, (as the Court must when ruling on summary judgment), the Court finds that she has made a prima facie case for retaliation under the direct method of proof. The Court therefore need not analyze her arguments under the indirect, burden-shifting method of proof, [dkt. 46 at 12-13].[4] Accordingly, the Court denies CCA's motion for summary judgment on Ms. Teske's FMLA retaliation claim (Count I).

### 2. Liquidated Damages

CCA also seeks summary judgment on the issue of whether liquidated damages are available to Ms. Teske for her FMLA claim. [Dkt. 46 at 21.] An employer who violates the FMLA may be liable for damages that include "an additional amount as liquidated damages." 29 U.S.C. § 2617(a)(1). However, the FMLA provides an exception to the award of liquidated damages in circumstances under which an employer "proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the law]." 29 U.S.C. § 2617(a)(1)(A)(iii).

Here, although CCA claims it "acted at all times with good faith with respect to [Ms. Teske's] employment," the affidavits from Captain Ward and Lieutenant Rinehart provided by Ms. Teske directly contradict that assertion, as discussed above. Because admissible evidence

---

[4] However, the likely result of such analysis would be that the same statements undermine the validity of the discipline imposed on Ms. Teske, rendering her comparators valid. The evidence also raises a genuine issue of material fact as to pretext.

exists from which a reasonable jury could infer that CCA did not act at all times with good faith, and Ms. Teske is entitled to the benefit of all such inferences, a genuine issue for trial exists here, *Celotex*, 477 U.S. at 330, and CCA is not entitled to summary judgment on the issue of liquidated damages.

### B. Ms. Teske's Claims Under the ADA  (Count II)

In addition to her claim that CCA discriminated against her in violation of the FMLA, Ms. Teske also claims that CCA violated the ADA by failing to provide her with reasonable accommodations for her bipolar disorder.  To succeed on a failure-to-accommodate claim under the ADA, Ms. Teske must show that (1) she is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the employee's disability.  *Mobley v. Allstate Insurance Company*, 531 F.3d 539 (7th Cir. 2008).

Because CCA concedes knowledge of Ms. Teske's medical restrictions, [dkt. 36 at 21], the second step is not at issue.  Within its briefing in favor of summary judgment, however, CCA argues both that Ms. Teske is not a qualified individual under the ADA, [dkt. 53 at 8], and that she was not denied reasonable accommodations, [dkt. 36 at 21].

Under the ADA, a qualified individual is one who can perform the essential functions of her job with or without reasonable accommodations.  *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010).  To be a qualified individual, an employee must be able to perform the position into which she was hired.  *Id*. at 680. An employer is not required to "strip a current job of its principal duties to accommodate a disabled employee."  *Id*.  Also, an employer has no duty to reassign an employee to a permanent light-duty position.  *Id*. (internal citations omitted).

CCA argues, for the first time in reply, that Ms. Teske is not a qualified individual because she could no longer perform two of the essential job functions of a correctional officer – namely, the requirement that she "be capable of working *any* post during *any* shift," [dkt. 53 at 8 (emphases in original)], and that Ms. Teske be capable of enduring verbal and mental abuse from inmates [*id.* at 9.] It is well-established that arguments raised for the first time in a reply brief may be deemed waived, *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). However, as the Court has noted earlier, this case will be decided on the merits. The Court will therefore consider the challenge to Ms. Teske's qualification, as Ms. Teske has been afforded an opportunity to respond to CCA's argument.

On surreply, Ms. Teske concedes that "supervising inmates" and "enduring verbal and mental abuse when confronted by inmates" were essential functions of her position. [Dkt. 58 at 3.] She has also admitted that when she experienced emotionality, she was unable to perform these functions; indeed, it is precisely these circumstances that Ms. Teske was unable to endure on January 8, 2010, when she became "emotionally unstable" due to the "verbal aggressiveness" of an inmate, [dkt. 37-2 at 86]. Her requested accommodation of a post with limited inmate cannot guarantee no such abuse will occur, and begs the question as to whether she can perform the essential functions of the correctional officer position. Therefore, in light of Ms. Teske's admission that enduring inmate abuse is an essential function of her position, and her admitted inability to handle such abuse, the Court finds that Ms. Teske is not a qualified individual under the ADA. *Gratzl*, 601 F.3d at 679.

Because Ms. Teske has failed to satisfy the threshold requirement of being a qualified individual, the Court finds that CCA is entitled to summary judgment on any claim Ms. Teske has alleged under the ADA (Count II). Accordingly, the Court need not reach the issue of whether

punitive damages would be available to Ms. Teske for claims brought under the ADA, [dkt. 36 at 25].

### C.  Ms. Teske's Claim under the Indiana Workers' Compensation Act (Count III)

Ms. Teske also claims that CCA violated the IWCA by terminating her employment as a result of her filing a worker's compensation claim.  To succeed on a claim under the IWCA, Ms. Teske must establish a causal connection between her termination and her workers' compensation claim.  *Dale v. J. G. Bowers*, 709 N.E.2d 366, 369 (Ind. Ct. App. 1999).  Evidence that may be used to demonstrate such a causal connection includes "proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext."  *Id*.

Here, the evidence Ms. Teske offers in support of her IWCA claim is identical to her evidence for FMLA claim: temporal proximity and the statements of Captain Ward and Lieutenant Rinehart regarding the true reason for her discharge.  [Dkt. 46 at 18-21.]  The Court finds this evidence more than enough to establish pretext and defeat CCA's motion for summary judgment.  *See Dale*, 709 N.E.2d at 370 (Ind. Ct. App. 1999) (finding that temporal proximity alone was sufficient to establish pretext and defeat a summary judgment motion).  While CCA attempts to argue that *Dale* finds temporal proximity sufficient to establish pretext, rather than causation, CCA apparently misapprehends the standard: under the IWCA, the causal connection is established through evidence of pretext.  *See id*. at 369 (The employee must present evidence that directly or indirectly implies the necessary inference of causation...such as proximity in time or evidence that the employer's asserted lawful reason is a pretext.").

Because the facts viewed in the light most favorable to Ms. Teske permit the inference that CCA's stated reason for her termination was a pretext for retaliation, CCA is not entitled to summary judgment on Ms. Teske's IWCA claim (Count III).  *Id*.

Case 1:11-cv-00412-JMS-TAB   Document 87   Filed 08/24/12   Page 15 of 15 PageID #: 838

# V.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to File Supplemental Affidavit, [dkt. 59], and Motion to Amend/Correct and Substitute Signed Affidavit, [dkt. 74], and **GRANTS in part and DENIES in part** Defendant's Motion to Strike Surreply, [dkt. 72]. The Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment, [dkt. 35]. CCA is entitled to summary judgment on Ms. Teske's FMLA Interference Claim (Count I), and her ADA claims (Count II). Ms. Teske's retaliation claims under the FMLA (Count I) and IWCA (Count III) will proceed to trial.

08/24/2012

*(signature)*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF:**

John H. Haskin
HASKIN & LARUE
jhaskin@hlllaw.com

John T. L. Koenig
BARNES & THORNBURG, LLP
john.koenig@btlaw.com

Paul Anthony Logan
HASKIN & LARUE
plogan@hlllaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

- 15 -