UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NORA TESKE,           *Plaintiff*, | ) ) ) | |
| *vs*. | ) ) ) | 1:11-cv-00412-JMS-TAB |
| CCA OF TENNESSEE, LLC, a/k/a/ Corrections Corporation of America,           *Defendant*. | ) ) ) ) ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

From September 17-19, 2012, the Court conducted a simultaneous jury trial and bench trial in this matter, in which it submitted Plaintiff's ADA retaliation claim to the jury on an advisory basis.  [*See* dkt. 104.]  The advisory jury found against Ms. Teske on all claims, including her ADA retaliation claim.

The Court now enters its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).  Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such. Finally, the Court recognizes that there was conflicting testimony on several issues presented at trial. The Court considered all of the evidence presented by the parties in arriving at its findings of fact.

**I.**
**FINDINGS OF FACT**

In November 2008, Plaintiff Nora Teske was hired by Defendant CCA of Tennessee ("CCA") as a correctional officer.  CCA operates what is known as the Marion County Jail II, a pre-trial detention facility for accused persons awaiting trial in the Marion Superior Court.  It

houses over 1,000 detainees at any given time. Ms. Teske was fired on January 8, 2010, after refusing repeated direct orders to return to her post and telling her supervisor, "Fuck you."

During her term of employment she had an on the job injury which resulted in a workers' compensation claim.  She also took, and immediately prior to her termination exhausted, her FMLA leave.[1]  In the past, when she presented CCA with medical documentation ordering work restrictions, CCA accommodated Ms. Teske with lighter duty job assignments. After a period of leave for mental health or emotional issues,[2] Ms. Teske was returned to work with no restrictions on December 21, 2009.  Her supervisors were advised that she had no restrictions.

Ms. Teske's first day back to work was December 25, 2009.  She was late for work on December 26, and received a written disciplinary warning for her tardiness.  On December 30, Ms. Teske travelled to Jail II and was in the parking lot before her shift.  She spoke to her supervisor and asked him what her assignment was that day.  He advised she would be working a general population assignment and she told him she wasn't coming in.  He instructed her to report and she told him he could go ahead and fire her.  She did not report, instead she called in stating she was ill.  The supervisor wrote her up for violating the company's policy of not calling in at least 2 hours before a scheduled shift assignment.  While the supervisor recommended that Ms. Teske be terminated, the warden, Jeff Conway, issued a two-day suspension and placed Ms. Teske on "final warning."

On January 8, 2010, Ms. Teske was assigned to a general population assignment where she had worked before.  While conducting the count, a critical procedure in the daily operation of

---

[1] The jury found that CCA did not terminate Ms. Teske for making a workers' compensation claim or taking FMLA leave.

[2] Ms. Teske was experiencing an understandable emotional response to the terminal illness of her grandmother during the fall of 2009.  While she reported to CCA she had bi-polar disorder, no competent medical evidence supporting such diagnosis was introduced at trial.

Jail II, an inmate questioned whether Ms. Teske was performing the count correctly. Ms. Teske was unhappy with the challenge, and left her post, seeking reassignment to a position with less inmate contact. Captain Goins, her supervisor, instructed her to return to her post. Goins is a stoic individual, who simply advised Ms. Teske to return to her post. After several repeated instructions to return to her post, Ms. Teske told Captain Goins, "Fuck you." Ms. Teske's statement constituted insubordination.

A meeting with the Warden Conway soon followed, and Ms. Teske was terminated for insubordination occurring while she was on a final warning. She was not terminated for seeking an accommodation to a lighter duty post.

When asked what her understanding was of why she had been terminated, Ms. Teske testified, "Because I was tardy and for using workmen's comp and FMLA." She was silent on the issue of her request for accommodations under the ADA.

## II.
### CREDIBILITY DETERMINATIONS

The Court recognizes that some of the foregoing findings are based on controverted evidence. The Court finds credible Captain Goins' testimony that Ms. Teske's conduct on January 8, 2010, constituted insubordination under CCA's Code of Conduct, and that he recommended Ms. Teske's termination as a result of this Code violation. The Court also finds credible Captain Goins' testimony that the fact that Ms. Teske had requested and/or received accommodations was not a factor in his decision.

The Court also finds credible human resource officer Dawn Baptist's and Warden Conway's testimony that Ms. Teske's various write-ups and insubordination resulted in her termination, and the Court further credits Ms. Baptist's testimony that another employee who had not requested accommodations was terminated for similar insubordination.

The Court does not credit Ms. Teske's testimony that Lieutenants Ward and Rhinehart were told that CCA was trying to terminate Ms. Teske for her exercise of workers' compensation benefits and FMLA leave. Indeed, Lieutenant Ward's own testimony – only that he was told to write Ms. Teske up for any policy violations she actually committed – fails to support this contention or any notion that requested accommodations were motivating CCA's actions.

The Court notes that Ms. Teske testified only that she believed her exercise of workers' compensation and FMLA leave were factors in her termination; her testimony was silent on the issue of her request for accommodations.

### III.
### CONCLUSIONS OF LAW

The ADA prohibits an employer from retaliating against any employee for requesting an accommodation. To succeed on a retaliation claim under the ADA, Ms. Teske need prove by a preponderance of the evidence that she requested accommodations under the ADA and that there was a causal connection between her request and her termination. A retaliation claim based on an employee having requested an accommodation does not require that a plaintiff show that she is "disabled" within the meaning of the ADA. *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 938 (7th Cir. 2006). An employer may violate the ADA by retaliating against an employee "for attempting to raise good-faith claim under the ADA." *Id*.

Ms. Teske has not shown by a preponderance of the evidence that CCA terminated her as a result of any request for accommodations under the ADA. Ms. Teske's insubordinate behavior while on final warning status for earlier disciplinary violations caused her to lose her job with CCA.

The conduct of CCA was therefore consistent with the ADA, and CCA is not liable to Ms. Teske for any alleged violation under the ADA.

- 5 -

The Court finds in favor of CCA and against Ms. Teske such that Ms. Teske will recover nothing by way of her Complaint against CCA for any alleged violation of the ADA.

09/28/2012

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Jason Porter Cleveland
JOHN H. HASKIN & ASSOCIATES
jcleveland@hlllaw.com

John H. Haskin
HASKIN & LARUE
jhaskin@hlllaw.com

John T. L. Koenig
BARNES & THORNBURG, LLP
john.koenig@btlaw.com

Paul Anthony Logan
HASKIN & LARUE
plogan@hlllaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

Peter Thomas Tschanz
BARNES & THORNBURG LLP
peter.tschanz@btlaw.com